COLUMBIA TERMINALS COMPANY, Appellant, v. EDMOND KOELN, Collector of the Revenue of City of St. Louis.—3 S. W. (2d) 1021.

Court en Banc, March 17, 1928.

446

*Thompson & Thompson* and *Richmond C. Coburn* for appellant.

*Julius T. Muench* and *Charles J. Dolan* for respondent.

ATWOOD, J.—This is a suit in equity to restrain defendant from instituting and prosecuting proceedings to compel the collection of an increase of twenty per cent in the assessed value of certain personal property belonging to plaintiff, resulting from an order of the State Board of Equalization, and to cancel the tax bill issued in connection therewith. Defendant filed demurrer to plaintiff's amended petition stating that "said petition does not state equity nor ground of equitable interference, and that the said petition does not state any cause of action against the defendant." From the judgment of the trial court sustaining this demurrer and dismissing the petition plaintiff has appealed.

Appellant contends that the increase was unlawful in its case, because (1) no notice was given to appellant of the proposed increase; (2) the original assessment of appellant's property represented its true value; and (3) the Assessor of the City of St. Louis did not add to the assessments of deceased persons and minors said twenty per cent increase. Points suggested in plaintiff's amended petition covered a wider range, but the briefs filed in this court indicate that these are the points now urged. As the case went off on demurrer to the petition we shall treat all facts well pleaded in the petition as facts in the case.

On November 28, 1923, plaintiff, by an officer, filled out, signed and swore to a form of assessment list provided by the Assessor of the City of St. Louis, Missouri. Under class 10 on this list plaintiff listed at its true value on June 1, 1923, certain wagons, trailers, office furniture and fixtures, automobiles, auto trucks, machinery and other apparatus, tools, materials and appliances, in the total sum of $189,430. Thereafter said list was delivered to said assessor, and be-

450

fore January 1, 1924, said property was assessed for state, city and school taxes for 1924 by the Assessor of the City of St. Louis at the valuation found in plaintiff's return and so entered on his books. On February 15, 1924, the said assessor filed in the office of the State Auditor an abstract of his assessment books, showing aggregate assessed valuation of all classes of taxable property for the city of St. Louis, including that for the class "All Other Personal Property" (said caption including classes 3, 4 and 10 of the assessment list provided by law) fixed by the assessor at $39,339,930, which aggregate included plaintiff's said list of property as valued by said assessor. On March 5, 1924, the Missouri State Tax Commission notified the Assessor of the City of St. Louis that it had recommended to the State Board of Equalization that the class of property designated in said assessor's abstract "All Other Personal Property" be *increased* from $39,339,930 to $47,207,916, *an increase of twenty per cent*. In due time said recommendation of the Tax Commission was made to the State Board of Equalization, which last named body, on March 27, 1924, accepted the recommendation by the following order made and entered of record:

"Board takes up and discusses fully a letter from Wm. Buder, City Assessor, St. Louis City, in which he protests against the Tax Commission's recommendation of an increase of 20 per cent on 'all other personal property' in St. Louis City. Board votes to accept Tax Commission's recommendations on this matter and orders said 20 per cent increase certified to the proper authorities in St. Louis City."

On April 1, 1924, said State Board of Equalization again approved said recommendation of the Tax Commission by another entry upon its records in substance stating that said Board of Equalization, after due consideration of the schedules and tables of equalization of the valuation of real and personal property of the State of Missouri for 1924, adopted the same, which list $47,207,916 for the city of St. Louis under the caption "All Other Personal Property." On the 3rd day of April, 1924, the Assessor of the City of St. Louis received from the State Board of Equalization a notification that it had ordered the increase in question. The City Board of Equalization was then in session and it did not adjourn until April 12, 1924. On the final day of its session said board recommended to the assessor that compliance be had with the order made by the State Board of Equalization, and the following entry was made in the minutes:

"Saturday, April 12, 1924.

"WHEREAS, The president has informed the board that there has been certified to him from the State Board of Equalization, an order of said board, directing him, as Assessor of the City of St. Louis,

to add twenty per centum to the aggregate valuation of the assessment made by him upon corporate companies, other than banks, and all other personal property included in classes 3, 4 and 10 of assessment list, in said city of St. Louis, for the taxes of the year 1924; and has further informed the board that he has been advised by the Attorney-General of the State that said additional twenty per centum may be added either by distribution of the same upon specific personal property, or by a blanket addition to all personal property of corporate companies, other than banks, and all other personal property included in classes 3, 4 and 10 of assessment list, upon the assessment books; and this board, recognizing that the former method will necessitate an extended examination and appraisal of the valuation placed by the assessor upon all the personal property upon the assessment books and, as required by law, a consequent notice to the owner of any increased valuation added by order of the board to any specific personal property, specifying when and where the hearing will be granted to such owner; now places of record its judgment that such action is impossible and impracticable within the limited period fixed by law for the session of the board, and therefore recommends to the assessor that compliance with said order of the State Board of Equalization be had by the addition of said twenty per centum increase to the valuation of corporate companies, other than banks, and all other personal property included in classes 3, 4 and 10 of assessment lists of the city of St. Louis as the same now appears from the assessment books for the taxes of the year 1924. . . .

"It was moved by Mr. Noble, seconded by Mr. Blake, and unanimously adopted by the board, that the assessor be, and he is hereby directed to correct and change the assessment records according to the findings of this board during each and all of its sessions."

Thereafter, without giving appellant any notice, the Assessor of the City of St. Louis changed the aggregate assessment on "all other personal property" from $39,339.930 to $47.207.916, by adding twenty per cent to the assessed valuations theretofore made by him of corporate companies other than banks and all other personal property included in classes 3, 4 and 10 of the assessment list of the city of St. Louis, appearing on his assessment books for the year 1924, *except personal property belonging to the estates of decedents and of minors, for which no change was made.* This increase upon the assessor's books raised plaintiff's individual assessment of its property listed under class 10 from $189,430 to $227,320. After thus changing his assessment books said assessor made an abstract of the same as provided by law and delivered one copy thereof, on or prior to May 4, 1924, to the Mayor of the City of St. Louis, and another to the State Auditor. Thereafter, said assessor caused a

tax bill to be made out against plaintiff in conformity with said increased valuation and assessment for the state, city and school taxes of 1924, which was delivered to defendant for collection. Plaintiff alleged that its said tax bill is for $5,851.92, while except for said increased assessment of twenty per cent it would have been for $4,916.05, and that it is without remedy by and through the ordinary processes and proceedings at law.

Appellant's first contention is based on the allegation in its amended petition that the twenty per cent increase is illegal and void because it was made "without any notice to the plaintiff, thereby violating Section 11 of Article XV of the Charter of the City of St. Louis, Missouri, and thereby depriving plaintiff of its property without due process of law, in violation of Section 30 of Article II of the Constitution of the State of Missouri, and the Fifth Amendment of the Constitution of the United States, and of Section 1 of the Fourteenth Amendment of said Constitution of the United States." Appellant does not urge that the State Board of Equalization should have given plaintiff notice of its action, but evidently takes the position that under Section 11, Article XV, of the Charter, the City Board of Equalization should have notified plaintiff that the increase in question would be made. Section 11, Article XV, of the Charter of the City of St. Louis is as follows: '

"Said board shall have the power and duty to hear complaints and appeals, and to adjust, correct and equalize the valuations and assessments of any taxable property, real or personal, within the city and to assess and equalize the value of any taxable property, real or personal, within the city, and to assess and equalize the value of any taxable property, real or personal, omitted from the assessment books then under examination by them, and to adjust and correct the assessment books accordingly; provided, that if said board proposes to increase any assessment or to assess any such omitted property, it shall give notice of the fact to the person owning or controlling the property affected, his agent or representative, by personal notice, by mail, or by advertisement, specifying when and where a hearing shall be granted."

It seems clear that this section relates only to the work of the city board in equalizing individual assessments and assessing omitted property. Whenever in the course of such work *that body proposes* to increase any assessment or assess omitted property it must give notice to the owner or person in control of the property. However, it is apparent from the conceded facts that this increase did not result from any work of the City Board of Equalization in equalizing individual assessments or in assessing omitted property. The aggregate increase was ordered by the State Board of Equalization. It may be

that in equalizing individual assessments and in assessing omitted property a local board of equalization will raise the aggregate assessed valuation as shown by the abstract of the assessment books previously filed by the assessor in the office of the State Auditor, so as to absorb a part of the aggregate increase ordered by the State Board of Equalization. It does not appear from the record before us that such was done in this case, but no matter whether, pursuant to the order of the State Board, the increase was met by adding such remainder to the individual assessments or by adding the whole of such aggregate increase where none of it had been so absorbed, the increase would still be based on the order of the State Board of Equalization and in no sense could it be regarded as an increase *proposed* by the City Board of Equalization. Therefore, the City Board of Equalization was not required by the above charter provision to give notice to plaintiff of such increase. In defining the functions of such local boards in other counties of the State we have in Trust Co. v. Schramm, 269 Mo. 489, l. c. 498, thus held that they act only in a ministerial capacity:

"As clearly indicating that the functions of the local board are purely ministerial after the state board has acted, we find Section 11408, which provides that when the report of the state board is not received at or during the session of the county board, the *county clerk* shall adjust the tax books according to such report when the same is received. It could not be contended that the county clerk in such a case would have any authority to change the valuation fixed by the state board, and it is hardly reasonable to assume that the Legislature intended that the conclusiveness of the state board's action should depend upon whether its report was received at a particular time."

The above point is ruled against appellant.

The allegation in support of appellant's next contention is that "said action resulted in the assessment of plaintiff's property at more than its true value, in violation of the aforesaid Section 3 of Article X of the Constitution of the State of Missouri and of the laws thereof." This constitutional provision is as follows:

"Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws."

It will be observed that neither here nor elsewhere in the Constitution is it said that property shall be taxed at its value. Section 4 of the same article deals with this point and only requires that: "All property subject to taxation shall be taxed in proportion to its value."

It is true, as suggested by appellant, that Section 12762, Revised Statutes 1919, provides that every assessor shall take an oath that he will assess all property in the county in which he assesses "at what

he believes to be its actual cash value;'' that Section 12802 provides that ''the assessor shall value and assess all the property on the assessor's books according to its true value in money at the time of the assessment; and all other personal property shall be valued at the cash price of such property at the time and place of listing the same for taxation;'' that Section 12821, Revised Statutes 1919, provides that county boards of equalization shall ''equalize the valuation and assessment of all such property, both real and personal, within their counties respectively, so that each tract of land shall be entered on the tax book at its true value;'' that Section 12822, Revised Statutes 1919, provides that such boards of equalization shall raise the value of such parcels of land and personal property ''as in their opinion have been returned below their real value,'' and reduce the valuation of such property as in their opinion ''has been returned above its true value as compared with the average valuation of all the real and personal property of the county;'' that Sections 5 and 8, Article XV, of the Charter of the City of St. Louis provide that the assessor ''shall take an oath similar to that required by law of county assessors,'' and shall assess property ''within the city in the manner provided by law;'' and that we have recognized and applied the rule of law so announced in State ex rel. v. Stamm, 165 Mo. 73, 1. c. 79; State ex rel. v. Western Union Tel. Co., 165 Mo. 502, 1. c. 516; and Trust Co. v. Schramm, 269 Mo. 489, 1. c. 494. But such findings of true values are not conclusive upon the State Board of Equalization, which is a creature of the Constitution, and Section 12855, Revised Statutes 1919, a law equal in authority, dignity and force with the statutes above cited, requires such board to ''add to the valuation of each class of the property, real or personal, of each county which it believes to be valued below its real value in money such per centum as will increase the same in each case to its true value,'' and to ''deduct from the valuation of each class of the property, real or personal, of each county which it believes to be valued above its real value in money such per centum as will reduce the same case to its true value,'' although such exercise of its judgment as to true values may result in raising some individual assessments above values previously fixed as true. Such action of the State Board of Equalization is conclusive. [Sec. 12821, R. S. 1919; Trust Co. v. Schramm, 269 Mo. 489, 1. c. 498.] In the instant case the State Board of Equalization only did what it was empowered and required by law to do and its action was not rendered unlawful because it may have resulted in raising the amount of appellant's assessment above what it swore was the true value of the property returned and what the assessor and the city board of equalization found to be the true value. Even if the value finally fixed as the result of the action of the State Board of

Equalization was in excess of the actual value of the property mere error of judgment as to the valuation would not be ground for equitable relief. The valuation fixed will not be interfered with in equity "unless so grossly excessive as to be inconsistent with an exercise of honest judgment, or so unequal and discriminating as to violate the fundamental law of the land." Cooley on Taxation (4 Ed.) sec. 1650; First National Bank v. Patterson, 65 Colo. 166, 1. c. 174; Hacker v. Howe, 72 Neb. 385, 1. c. 394; Board of Comrs. of Finney County v. Bullard, 16 L. R. A. (N. S.) 807, and cases cited. No such allegation was made in connection with appellant's second point and the petition stated no cause of action under this head.

A different situation, however, is presented in appellant's third contention. On this point the petition alleged that the action of the Board of Equalization of the city of St. Louis, and of the City Assessor, in increasing plaintiff's assessment was "illegal, unconstitutional and void" because "in not increasing the assessed value of the personal property, included in classes 3, 4 and 10 of the assessment list of St. Louis, belonging to the estates of deceased persons and minors, the principle of uniformity in taxation was disregarded, and Section 3 of Article X of the Constitution of the State of Missouri, requiring all property subject to taxation to be taxed in proportion to its value, was violated, as was also Section 1 of Amendment Fourteen of the Constitution of the United States, which prohibits any state from denying to any person within its jurisdiction the equal protection of the laws." The petition further alleged that in so doing said City Board of Equalization and said Assessor acted "arbitrarily, without warrant of law, . . . and without regard to whether the resultant valuations were uniform throughout the city." Counsel for respondent suggest that the record fails to disclose that "any property belonging to estates of deceased persons and minors was listed in Classes Three, Four and Ten of the Assessment List of the city of St. Louis," but the suggestion will be disregarded in view of the fact that respondent is standing on its demurrer to plaintiff's petition which avers that "said Assessor did not raise the assessed value of the personal property belonging to the estates of deceased persons and minors." Taxes in Missouri must be uniform upon the same class of subjects within the territorial limits of the authority levying the same. [Section 3, Article X, Constitution of Missouri.] Upon the record before us we must indulge the presumption of right action on the part of the City Board of Equalization and assume that at the time it recommended that the assessor comply with the order of the State Board of Equalization it had completed its work of equalization and had equalized all individual assessments, including the assessments of the estates of deceased persons and minors, as by

law it was required to do.  If such was done it is evident that any method except a blanket increase in all assessments sufficient in the aggregate to meet the aggregate increase ordered by the State Board of Equalization would produce discrimination.  Lack of uniformity appears in the case stated by appellant because the assessor whose duty it was to adjust the assessments in conformity with the order of the State Board of Equalization, in applying the increase to all assessments except the assessments of estates of deceased persons and minors, adopted a rule or system which was designed to operate and did operate unequally in violation of this section of the State Constitution, as well as Section 1 of the Fourteenth Amendment of the Constitution of the United States.  [Cooley on Taxation (4 Ed.) sec. 302; Boonville National Bank v. Schlotzhauer (Mo.), 298 S. W. 732; Jefferson City Bridge & Transit Co. v. Blaser (Mo.), 300 S. W. 778; Cummings v. National Bank, 101 U. S. 20; and Greene v. Louisville Ry. Co., 244 U. S. 499.]  In the two Missouri cases above noted we have so recently reviewed the law here applicable that a discussion of the principles and controlling authorities would be superfluous in this opinion.

Counsel for respondent say that appellant failed to exhaust the remedies provided by law in that it did not appear before the Board of Equalization of the city of St. Louis to demand that its assessment be equalized with that of other taxpayers assessed on the same class of property, and that appellant, therefore, has no standing in a court of equity.  The discrimination with respect to which we hold plaintiff stated a cause of action occurred after the City Board of Equalization adjourned *sine die,* and the suggestion is without point.

The judgment of the trial court sustaining defendant's demurrer and dismissing plaintiff's petition is reversed and the cause is remanded with directions that the petition be reinstated.  All concur.