STATE EX REL. G. S. DAVIS v. ERNEST WALDEN, C. R. BISWELL, W. F. AMICK, B. M. WOODS and MORRISON HUGHES, JR., Members of the Howard County Board of Equalization, Appellants.—60 S. W. (2d) 24.

Division Two, April 20, 1933.

*Tyre W. Burton, Daniel C. Rogers* and *Roy McKittrick* for appellants.

682

R. M. Bagby and Lionel Davis for respondent.

COOLEY, C.—Certiorari issued by the Circuit Court of Howard County on the application of G. S. Davis, Relator, directed to the members of the county board of equalization to review certain proceedings of said board. The circuit court quashed the record of the board and respondents below have appealed. The case comes to the writer on reassignment.

The challenged proceeding of the board relates to the assessment of relator's personal property made as of June 1, 1927. Appellants made due return to the writ issued by the circuit court, certifying to that court in response to the command of the writ their record and proceedings as the county board of equalization relative to the assessment in question, from which the following facts appear.

Between June 1, 1927, and January 1, 1928, the assessor of Howard County regularly assessed relator as a resident of school district No. 33 of said county, fixing the valuation of his personal property at $60,000 and duly made up and returned his assessor's book so showing the assessment. At a meeting of the county board of equalization on April 17, 1928, the prosecuting attorney, purporting to act as such "and as attorney for school district number 35 and City of Fayette, and a taxpayer," presented to the board a petition stating in substance that Boyd M. Woods, the county assessor, had assessed relator Davis as a resident of school district No. 33, assessing his personal property at $60,000 and had so made up his books; that in fact relator was a resident of school district No. 35 and the city of

Fayette, as the assessor knew; that it was the assessor's duty to assess relator in the district of his residence and that the assessment as made was "unauthorized and illegal" and would deprive school district No. 35 and the city of Fayette of a portion of the taxes due them; and praying that the board cause relator's personal property to be listed and assessed in said school district No. 35 and the city of Fayette. The board on that day, upon only an *ex parte* hearing, if any, made an order that "said petition be and the same is hereby granted," and the next day, April 18, caused to be issued and served upon relator a notice that the board "has heard and passed upon a complaint as to your assessment of personal property and has changed the school district No. in which your personal property was assessed to school district No. 35, Howard County, Missouri, for the purpose of taxation for the year 1928," and that relator might appear before the board at a time and place named to show reasons, "if any may be given, why such change should not be made."

The board met April 25, 1928, pursuant to prior adjournment order, at which time relator appeared before it and filed a written request for rescission by the board of its order of April 17, setting out at length the reasons why it should be rescinded. Of this it is sufficient to say that relator challenged, on several grounds, the authority and jurisdiction of the board to make the indicated change and also asserted that at the time the assessment was made he was and for years had been a resident of said district No. 33, being assessed and exercising all rights of citizenship therein, and had never resided or claimed residence in district No. 35.

There was a hearing before the board and at the conclusion thereof the board made an order in which, after setting out the aforesaid petition filed with it by the prosecuting attorney, the "answer" of relator asking rescission of the order of April 17, and referring to said order and the notice to relator, it found and ordered as follows:

"The Court (Board?) doth further find that Boyd M. Woods, Assessor of said County, between the 1st. day of June, 1927, and the first day of January, 1928, assessed the personal property of said G. S. Davis in the amount of $60,000 for taxation for 1928 in School District No. 33 of said County; that the said Assessor's Book was accordingly made up showing said assessment in said School District No. 33 and the same returned to this Board. The Board doth further find that at the time that said assessment thereof was made by the assessor as aforesaid, the assessor knew that the said G. S. Davis was a resident of the city of Fayette and of Fayette School District No. 35 aforesaid; that said Assessor failed and refused to take a list of the taxable property of the said G. S. Davis in the City of Fayette, and in said School District No. 35, in which said G. S. Davis resides, and that said Assessment made by the Assessor, as aforesaid, is un-

authorized and illegal, and not in compliance with Section 11183, Revised Statutes 1919.

"On the issue raised the Board doth find that the said G. S. Davis is and was a resident of the City of Fayette and School District No. 35, at the time that the Assessor took his personal property list and that the said sum of $60,000 assessed against the personal property of the said G. S. Davis by the said Assessor of Howard County and by him listed in School District No. 33 in which District the said G. S. Davis did not reside at the time of the taking of the list should be and hereby is ordered to be added to the personal property list of School District No. 35, and the City of Fayette in which district and city the said G. S. Davis resided at the time the Assessor took said list and the Clerk of the County Court is authorized and directed to extend the taxes on the same to School District No. 35 and the City of Fayette for Collection for 1928."

The evidence heard by the board of equalization is not in the record. Being a proceeding by certiorari only the record certified by the board to the circuit court was before the court and that alone was considered, no evidence being heard.

■ Appellant's position is that since the board found that relator was in fact a resident of school district No. 35 and the city of Fayette and was not a resident of school district No. 33, the action of the assessor in assessing him as a resident of said district No. 33 was illegal and "of no force and effect," wherefore in legal effect *there was no assessment* of his personal property, and that it was property *omitted from the assessor's books* within the meaning of Section 12825, Revised Statutes 1919, now Section 9816, Revised Statutes 1929 (12 Mo. Stat. Ann. p. 7914), and under that section the board had the right to assess relator's property. It is upon that theory that appellants seek to reverse the judgment of the circuit court which took a different view and held that the board had exceeded its jurisdiction.

The county assessor is the officer upon whom the statute places the duty of assessing for taxation property such as that here involved; Section 12766, Revised Statutes 1919, Amended Laws 1923, page 375, Section 9756, Revised Statutes 1929 (12 Mo. Stat. Ann. p. 7872). By statute it is made his duty in listing property to take the number of the school district in which the taxpayer resides at the time of making his list, to be by him marked on the list and on his personal assessment book. We find no statute devolving this duty upon any other local officer or board. This the assessor did in the instant case. He listed relator as a resident of district No. 33 and so marked him upon the assessment list and the personal assessment book. The assessment book showed a regular and valid assessment. In performing such duties the assessor may be said to have acted in a judicial or quasi-judicial capacity.

■ The county board of equalization is a tribunal of limited powers and jurisdiction. In performing its functions its acts are judicial in character, State ex rel. Johnson v. Merchants' & Miners' Bank, 279 Mo. 228, 213 S. W. 815, but it has only such powers and jurisdiction as are committed to it by statute. It cannot be contended that it has the general powers and jurisdiction of a court of equity in matters pertaining to the assessment and collection of the revenue. If in exercising its statutory functions it exceeds its constituted power or jurisdiction its acts in excess of its jurisdiction are void and if such fact appears on the face of its record the record may be quashed on certiorari. [State ex rel. Van Raalte et al. v. Board of Equalization, 256 Mo. 455, 461, 165 S. W. 1047; State ex rel. Johnson v. Bank, supra.]

■ The duties and powers of the county board of equalization are prescribed by Article 3 of Chapter 59, Sections 9811 to 9818 inclusive, Revised Statutes 1929 (12 Mo. Stat. Ann. pp. 7910-7915). [Secs. 12820-12827, R. S. 1919.] Section 9811, supra, provides for the creation, personnel and times of meeting of such boards. Section 9812 gives the board power "to hear complaints and to equalize the valuation and assessments" upon real and personal property and Section 9813 prescribes the rules to be observed in so doing. Those sections of the statute do not give the board power to assess property, that is, to make original assessments of its own. [See State ex rel. Dalton et al. v. Baker et al., 170 Mo. 383, 70 S. W. 872; State ex rel. Morris v. Cunningham, 153 Mo. 642, 55 S. W. 249; State ex rel. Thompson v. Bethards, 320 Mo. 1164, 9 S. W. (2d) 603, 605.] Section 9814 gives it power to hear and determine appeals "made from the valuation of property made by the assessor," and by Section 9815 it may send for persons and papers, etc., in relation to such appeals. The latter two sections are not involved and have no application here. There was no appeal from the assessor's valuation nor did the board alter or purport to alter such valuation. Neither was the board acting or purporting to act under Section 9812, giving it power to *equalize* assessments. Nor was this a proceeding under Section 9762 which authorizes the board to tax property and treble the tax by way of penalty where a taxpayer, with intent to defraud, has delivered to the assessor a false list of his property and the assessor has in writing notified the board thereof. No such complaint was made and no such notice was given.

In State ex rel. v. Cunningham, supra, it was held that: "The board of equalization have nothing to do with making a list of the property or adding property to the list returned, except in the proceeding contemplated in Section 7537 when the assessor gives a written notice to the board that a person has made a false list with intent to defraud." [153 Mo. l. c. 652.] [Sec. 7537 referred to in the quotation is now Sec. 9762, R. S. 1929.]

686

■ The only statutory provision relied upon or that could be looked to under the facts here presented to sustain the action of the board is Section 9816, Revised Statutes 1929 (Sec. 12825, R. S. 1919), and it is that section of the statute alone that appellants invoke as giving them authority and jurisdiction for the action complained of. Said Section 9816 reads in part:

"The county board of equalization, at its annual meeting in each year, in addition to the powers now conferred by law, shall have authority to assess and equalize the value of any property that may have been omitted from the assessor's books then under examination by said board, and in case said board shall add any property, real or personal, to said assessor's books, it shall cause notice in writing to be served upon the owner of such property, stating the kind and class of property and the value fixed thereon by said board, and naming the time and place, not less than five days thereafter, when and where such owner may appear before said board and show cause why said assessment should not be made."

Said section further provides for the extension of such property on the assessment books. It was enacted in 1903, Laws 1903, page 253. Prior to its enactment it had been held in State ex rel. v. Cunningham, supra, as pointed out above, that the board of equalization could not assess property that had been omitted from the assessor's books except under the provisions of what is now Section 9762, Revised Statutes 1929, which would not apply to property that had escaped assessment by the assessor except in cases coming within the provisions of the latter section. In the Cunningham case it was further said that under the then statutes creating the board of equalization and prescribing its duties, its sole power "is to equalize valuations and assessments and hear appeals from the judgments of the assessor." [153 Mo. l. c. 653.]

The Act of 1903 recognized the lack of jurisdiction of the board of equalization to assess omitted property generally for it carried an emergency clause reciting: "There being now no definite provisions in the statutes for the assessment by the county board of equalization of omitted property, an emergency is hereby declared to exist within the meaning of the Constitution, and this act shall take effect and be in force from and after its approval."

By said Section 9816 the board of equalization, "in addition to the powers now conferred by law, shall have authority to assess and equalize the value of any property *that may have been omitted from the assessor's books then under examination by said board,*" and if it shall "add any property, real or personal, to said assessor's books," it shall cause notice to be given the owner, "stating the kind and class of property and the value fixed thereon by said board," etc.

In the instant case the property in question was not omitted from

the assessor's books then under examination by the board. It appeared on said books and had been assessed by the assessor. No property was added by the board to said assessor's books nor was any change made by the board as to the kind or class of property or the valuation thereof as entered by the assessor in said book. There was no discovery by the assessor of property which the relator had failed to return nor by the board of any other or different property owned by relator and not listed by him and assessed by the assessor and shown on his books.

The law devolves upon the assessor the power and duty of assessing for taxation property such as that here in question. The board of equalization is authorized to make the initial assessment of only such property as has been omitted from the assessor's books, that is, which the assessor has failed to assess. It is the existence of such property that authorizes the board to act. With respect to such omitted property, but none other, the board is authorized to make the initial assessment in all particulars and cause it to be extended on the assessor's books "as in case of other property" (Section 9816, supra). The statute is specific in its terms. It was not designed to give the board of equalization general authority to *assess* property nor for the correction of errors such as that here in question where the property has been assessed and so appears on the assessor's books. It seems clear that the board cannot acquire jurisdiction to make the assessment as of omitted property by striking from the assessor's books property appearing thereon and at the same time and by the same order restoring to the book the selfsame property, the only purpose and effect of the order being to change the *situs* of the property for taxation purposes from one school district of the county to another.

State ex rel. Hamilton v. Brown, 172 Mo. 374, 72 S. W. 640, cited by appellants, is not in point. That was an action by mandamus against the *county collector* to compel him to accept school taxes in a less amount and for a different school district than as shown on the school tax books certified to him by the county clerk. It was held that he was not responsible for the tax books but was responsible for the taxes as they appeared upon such tax books. It was also pointed out in that case that under the statutes existing when that assessment was made (1897), the assessor was not required or authorized to determine the school district of a taxpayer. That provision was added to the statute in 1899. [Laws 1899, p. 349.]

As stated above, the county board of equalization is not vested with general equity powers. Its powers and jurisdiction are limited by the statute. The courts cannot add thereto powers not within the scope and purpose of the statute nor is it necessary for reasons of public policy or necessity to attempt by labored construction to

give the statute a meaning and effect different from that which the ordinary interpretation of its language imports. Other provisions of the statutes relative to assessment and collection of the revenue afford summary and ample means of relief from errors in assessments such as the error here in question. By Sections 9854, 9855 and 9856, Revised Statutes 1929, 12 Missouri Statute Annotated, pages 7930-7936 (Secs. 12847, 12848, 12849, R. S. 1919), the State Tax Commission is given authority, subject to the approval of the State Board of Equalization, to have general supervision over all assessing officers (Sec. 9854, subdiv. 1); to receive complaints as to property not assessed or that has been fraudulently or improperly assessed, and to institute proceedings to correct the irregularity complained of (subdiv. 3); to exercise the power of original assessment ''now possessed by any assessing officer,'' subject to the rights given by the Constitution to the State Board of Equalization (subdiv. 6); and to cause to be placed on the assessment rolls property omitted therefrom and to correct any errors found on such rolls and cause the proper entries to be made thereon (subdiv. 7). By Section 9855 it is provided that if upon investigation or by written complaint of any taxpayer, etc., it be made to appear to the commission that property subject to taxation has been omitted from the assessment roll ''or individual assessments have not been made in compliance with law,'' it may proceed in the manner there prescribed to correct such omission or error. And by Section 9856 it is given the general power to ''do any and all things necessary in compliance with existing statutes to perfect, complete and make effective the assessment and collection of the revenue.'' See State ex rel. Thompson v. Jones, 328 Mo. 267, 41 S. W. (2d) 393, and State ex rel. Thompson v. Collier, 328 Mo. 246, 41 S. W. (2d) 400, especially the former, for full discussion by the court en banc of the powers and authority of the Tax Commission under the statutes above referred to.

We are of the opinion that the learned trial court decided the case correctly and its judgment is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.